IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| ROBIN RUDY-PALOS,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>    Defendant. | Case No. 4:16-cv-04081-JEH |

**Order and Opinion**

Now before the Court are the Plaintiff, Robin Rudy-Palos', Motion for Summary Judgment (D. 15)[1] and the Commissioner's Motion for Summary Affirmance (D. 19). The parties provided supporting Memoranda thereto. (D. 16; 20). For the reasons set forth, *infra*, this Court REVERSES the Commissioner's Decision, GRANTS the Plaintiff's Motion for Summary Judgment (D. 15), DENIES the Commissioner's Motion for Summary Affirmance (D. 19), and REMANDS for further proceedings consistent with this Order and Opinion.[2]

**I**

In October 2012, the Plaintiff filed an application for Disability Insurance Benefits (DIB) alleging disability beginning on October 2, 2013. Her claim was denied initially and upon reconsideration. The Plaintiff requested a hearing before an Administrative Law Judge (ALJ) and appeared before ALJ Diane Flebbe in October 2015, represented by counsel. ALJ Flebbe later found that the Plaintiff

---

[1] Citations to the Docket in this case are abbreviated as "D. __."
[2] The undersigned presides over this case with the consent of all parties. (D. 13).

retained the residual functional capacity (RFC) to perform sedentary work as defined by agency regulations, with some exceptions. She ultimately concluded that the Plaintiff was not disabled. (D. 9 at pp. 29-35). The Appeals Council denied the Plaintiff's request for review in January 2016, making ALJ Flebbe's Decision the final decision of the Commissioner. 20 C.F.R. § 404.981. The Plaintiff filed the instant civil action, seeking review of ALJ Fleebe's Decision pursuant to 42 U.S.C. § 405(g). (D. 1).

## II

At the time the Plaintiff applied for DIB, she was 54 years old. She was living in a home, in Rock Island, Illinois with her husband. The Plaintiff completed her GED while working fulltime. She was employed as a payroll clerk for 32 years. For the last six of those years, she was a supervisor as well. More recently, the Plaintiff also spent brief stints working as a server and as a dietary aide. She held both of these latter positions for approximately a year and a half each. The Plaintiff has not worked, however, since October 2, 2013. On the various SSA forms she submitted, the Plaintiff indicated that she has disabling depression, arthritis, bad ankles—including swelling and discoloration, Crohn's disease, scoliosis, arthritis in her back and hip, problems with peripheral vision, anxiety, possible fibromyalgia, and pain in her hands and groin. (D. 9 at pg. 94).

At the hearing before ALJ Flebbe, the Plaintiff testified that aside from being diabetic, the fact that she was overweight did not impact her listed impairments. (D. 9 at pg. 48). She also testified about several of her other impairments, including: Crohn's disease (*Id.* at pp. 50-59), hand pain/stiffness (*Id.* at pp. 59-60; 64-65; 78), struggles with vision (*Id.* at pp. 60-62), diabetes (*Id.* at pg. 62-63), depression and anxiety (*Id.* at pg. 63), her capacity to sit, walk, and stand (*Id.* at pp. 63-64; 66-67), deep vein thrombosis (DVT) and edema (*Id.* at pp. 65-66), lack of strength (*Id.* at pp. 67-70), and migraines (*Id.* at pp. 70-72). She confirmed that

2

there were no other ailments, that she could think of, limiting her ability to work. *Id.* at pg. 72.

Relevant to the Plaintiff's Motion for Summary Judgment, her counsel discussed numerous references to "bilateral hand pain, stiffness, and swelling[]" in her medical records. *Id.* at pg. 59. The Plaintiff testified that the problems she had with her hands persisted to the present day. She said her hands continue to "lock up" on her occasionally throughout the day and that they are irritated further by tasks such as using a pencil, using a knife while cooking, and typing. *Id.* at pp. 59-60; 64-65. Whether the Plaintiff does any of these activities or not, her hands cramp. She said the cramping happens approximately three to four times per day. *Id.* at pg. 65. It is particularly complicated for her when her hands are cramping after she goes to the bathroom in a public restroom. *Id.* at pg. 78.

The Plaintiff said she does all of the chores around her house, but it takes her longer than it used to. As a result of her hand cramping, she can no longer engage in two of her hobbies: cross stitch and motorcycle riding. She estimates that she last cross stitched three years before the hearing and last rode a motorcycle in the summer of 2014—approximately a year and a half before the hearing. The Plaintiff uses a computer regularly to access email, log in to her social media accounts, and play games. She also has a cell phone and uses it to text and access the internet.

Vocational Expert, George Paprocki, also testified at the Plaintiff's hearing. Based on the Plaintiff's testimony, Paprocki affirmed that the Plaintiff had past relevant work history as a payroll clerk—including time spent as the chief payroll clerk, a server, and a dietary aide. *Id.* at pg. 83. Upon questioning from the ALJ, Paprocki stated his view on several hypotheticals involving someone situated identically to the Plaintiff. Assuming the person had the ability to perform sedentary and light exertion work with frequent climbing ramps and stairs,

3

balancing, stooping, kneeling, crouching, and crawling, but was not allowed to climb ladders, ropes, or scaffolding, Paprocki said they could engage in the Plaintiff's past relevant work, minus her work as a dietary aide. If the limitations were reduced exclusively to sedentary work, he said the outcome would remain the same.

Paprocki also testified that if a person such as the Plaintiff were to average taking an unscheduled break approximately 10 to 15 minutes in length one time per week, it would have no impact on their ability to do the Plaintiff's past relevant work. If the unscheduled breaks increased to once a day for three or four days per week, it would still not have an impact. Paprocki estimated that once the break time went over 30 minutes of unscheduled time off, however, it would have a negative impact on employment. He also stated that if the hypothetical person were limited to detailed work that is uninvolved, with only a few concrete variables, they would be able to do the Plaintiff's past work as a dietary aide, but not her other positions. In his opinion, her other two jobs did not have transferable skills.

Popracki opined that if an employee were able to make it to work every day but were off task more than approximately ten percent of the time, they would likely lose their employment on the basis of inadequate productivity. Likewise, if someone was missing work for two or more days in a given month, the result would be the same. Upon questioning from the Plaintiff's counsel, Paprocki explained that someone that missed more than one day per month during their probationary period would also likely be let go by their employer, before the position could become permanent. Paprocki stated that his testimony was consistent with the information found in the Dictionary of Occupational Titles (DOT) and that the portions of his testimony not specifically addressed by the DOT were based on his professional experience.

# III

In her Decision, the ALJ determined that the Plaintiff had the severe impairments of degenerative changes of the thoracic spine, right hip small enthesopathy formation, public symphysis sclerosis, tronchateric bursitis, symmetric arthralgias, Crohn's disease, and obesity. (20 CFR 404.1520(c)). (D. 9 at pg. 25). She specified that these impairments were "severe because they are medically determinable and have more than minimally affected the claimant's ability to perform basic work activites." *Id.* at pg. 26. In her discussion of the remaining impairments, which she found not severe and/or presenting mild limitations for various reasons, the ALJ stated the following about the Plaintiff's fibromyalgia:

> Although the record contains a diagnosis of fibromyalgia, the physician who made the diagnosis did not provide evidence of a history of widespread pain, at least eleven positive tender points on physical examination bilaterally, both above and below the waist, and evidence that other disorders that could cause the symptoms or signs were excluded [ ] SSR 12-2p. Therefore, fibromyalgia is not a medically determinable impairment.

*Id.* at pg. 26 (citation to the record omitted). She also commented that while the Plaintiff had fibromyalgia, "there is no evidence that fibromyalgia [was] ever confirmed through established diagnostic testing." *Id.* at pg. 31. There was no further reference to fibromyalgia in the ALJ's Decision. She later determined that the Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." *Id.* at 28.

The ALJ crafted the following Residual Functional Capacity for the Plaintiff:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform

5

> sedentary work as defined in 20 CFR 404.1567(a) except frequent climbing ramps and stairs, balancing, stooping, kneeling, crouching, crawling and no climbing ladders, ropes or scaffolding.

*Id.* at pg. 29. In reaching this finding, the ALJ stated that she considered all of the Plaintiff's testimony and the evidence documenting her symptoms, "in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." *Id.* at pg. 29. Attempting to follow protocol, she determined there was a medical impairment reasonably expected to produce the Plaintiff's symptoms. The ALJ further found, however, that in evaluating the intensity, persistence, and limiting effects of the Plaintiff's symptoms, they "are not supported[.]" *Id.* at pg. 30.

The ALJ also stated that the Plaintiff's "medical records and history of medication reflect that her physical issues are not so severe that they preclude the limited range of sedentary work outlined [in her RFC]." *Id.* She discussed the medical evidence as it related to several of the Plaintiff's remaining alleged impairments, highlighting the countervailing nature of the evidence. *Id.* at pp. 30-34. In addressing the Plaintiff's hand cramping and weak grip, the ALJ noted that "the record shows that these symptoms were not consistent and ongoing[]." She cited specific instances from the medical records where the Plaintiff's hands and grip strength were deemed to be sufficient. The ALJ also cited an instance in December 2013 where doctor Brian Cady attributed the Plaintiff's inability to work to "knee and hand pain and swelling[.]" *Id.* at pg. 33. She assigned little weight to Cady's opinion, however, because she found that it was "not supported by the objective record, as there is no diagnostic evidence to support the existence of a hand or knee impairment." *Id.* The ALJ further emphasized Cady's June 2015 conclusion, in a hand written note, that the Plaintiff could perform sedentary work and the other evidence from the record which corroborated this conclusion.

Before concluding that the Plaintiff was not disabled, the ALJ also found that she was capable of performing her past relevant work as chief payroll clerk since it did not require her to perform any duties precluded by her RFC.

IV

The Plaintiff argues that the ALJ's finding that she can perform her past relevant work is based in error and not supported by the substantial evidence. Specifically, she argues that (1) the ALJ's findings regarding her fibromyalgia and hand impairment are erroneous and unsupported, and (2) Popracki's testimony does not constitute substantial evidence in support of the ALJ's findings.

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual

7

determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. "A negative answer at any point, other than at step 3, stops [the] inquiry and leads to a determination that the claimant is not disabled." *Garfield v. Schweiker*, 732 F.2d 605, 607 fn. 2 (7th Cir. 1984).

In the instant case, the Plaintiff first alleges error at Step 2, arguing that the ALJ's finding that her fibromyalgia and hand impairments were not severe are erroneous and unsupported by substantial evidence. (D. 16 at pp. 12-16). In turn, this error at Step 2 resulted in an improperly formulated RFC at Step 4 by virtue of the fact that Popracki's testimony is not substantial supporting evidence. *Id.* In other words, in the Plaintiff's view, the erroneous finding that the Plaintiff could

8

perform her past relevant work, at Step 4, was *caused* by the error at Step 2 when, *inter alia*, the ALJ failed to make a determination regarding the Plaintiff's fibromyalgia. Consequently, the critical question before the Court is whether the ALJ erred at Step 2. If not, then there is no error at Step 4. If so, then the RFC formulated at Step 4 is *ipso facto* erroneous as well.

Step 2 is "merely a threshold requirement." *Curvin v. Colvin,* 778 F.3d 645, 648 (7th Cir. 2015), quoting *Castile v. Astrue,* 617 F.3d 923, 926-27 (7th Cir. 2010) (citation omitted; quoting *Hickman v. Apfel,* 187 F.3d 683, 688 (7th Cir. 1999). An ALJ's Step 2 analysis must be supported by substantial evidence. *Garmon v. Apfel,* 210 F.3d 374 (7th Cir. 2000).

In addition to a diagnosis of fibromyalgia, "the diagnosis must be supported by evidence meeting either of two sets of diagnostic criteria promulgated by the American College of Rheumatology, in 1990 and 2010." *Thomas v. Colvin*, 826 F.3d 953, 959 (7th Cir. 2016) (citing SSR 12-2p, 2012 WL 3104869, at *2-3). The 1990 ACR criteria requires: (1) a history of widespread pain; (2) at least 11 out of a possible 18 tender points on the body; and (3) evidence that other disorders that could cause the symptoms or signs were excluded. SSR 12-2p, 2012 WL 3104869, at *2-3. The 2010 ACR requires: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and (3) evidence that other disorders that could cause the symptoms or signs were excluded. *Id.* at *3.

"When a claimant produces evidence of an impairment, a determination of non-disability at step two is proper only when the medical evidence 'establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.' " *Wolms v. Barnhart*, 71 Fed.Appx. 579, 581 (7th Cir. 2003) (quoting *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986)). "[W]ithout any analysis [of

the ACR criteria] from the ALJ, there is no basis for drawing any conclusions about what evidence he considered or overlooked." *Thomas*, 826 F.3d at 959.

The Plaintiff initially challenges the ALJ's determination that her fibromyalgia was not a medically determinable impairment. (D. 16 at pp. 16-23). The ALJ in this case did implicitly reference the 1990 ACR criteria in making her finding. She merely asserted that the physician who diagnosed the Plaintiff's fibromyalgia failed to provide evidence that the criteria was present, without mentioning the source of the criteria. (D. 9 at pg. 26). The ALJ did cite to the record in making her assertion. (D. 9 at pg. 26 (citing D. 9-1 at pp. 199-203)). The medical record she referenced is a consultative examination report authored by doctor Afiz Taiwo, for the Bureau of Disability Determination Services. Taiwo spent approximately 30 minutes examining the Plaintiff in January 2014. (D. 9-1 at pg. 199). He ultimately formed an "impression" that the Plaintiff had fibromyalgia. *Id.* at pg. 202.

By the standards of SSR 12-2p, Taiwo's assessment is inadequate, standing alone, to support a finding that the Plaintiff has the severe impairment of fibromyalgia. As the Plaintiff highlights in her motion, however, her medical records are replete with support for a fibromyalgia diagnosis. (D. 16 at pp. 17-20). This includes a diagnosis of fibromyalgia from doctors other than Taiwo. (D. 9-2 at pp. 40, 68). While the consultative examination report cited by the ALJ is insufficient to support a diagnosis of fibromyalgia—the criteria from either ACR standard are not present—this document does not erase the remainder of the medical evidence in the record. Doctors repeatedly found that the Plaintiff had numerous tender points suggestive of fibromyalgia when she presented to them explicitly complaining of it. *See e.g.* (D. 9-1 at pp. 178-79; D. 9-2 at pp. 32-33, 40, 49, 68, 72). This evidence must be addressed by the ALJ.

The ALJ's determination that the Plaintiff's fibromyalgia was "not medically determinable" is not based on medical evidence. Without evidence that the Plaintiff's array of documented, persistent symptoms were not caused by fibromyalgia, the ALJ is not free to dismiss the associated symptoms. *See Williams v. Colvin*, 757 F. 3d 610, 613-14 (7th Cir. 2014). Therefore, the ALJ erred in finding that the Plaintiff's fibromyalgia was not medically determinable.

Furthermore, SSR 96-3p provides that if an individual's impairment does not appear from the objective medical evidence to be severe, then the ALJ must consider the limitations and restrictions caused by the individual's symptoms. *Curvin,* 778 F.3d at 649. Critically, "[i]f these additional considerations cause 'more than minimal effect on an individual's ability to do basic work activities', the ALJ must find that the impairment(s) is severe *and proceed to the next step in the process* even if the objective medical evidence would not in itself establish that the impairment(s) is severe." *Id.*, quoting SSR 96-3p (emphasis in original).

An error at Step 2 can, however, be deemed harmless, provided the ALJ considers all of a claimant's severe and non-severe impairments when determining the RFC immediately after Step 3. *Curvin,* 778 F.3d at 649. However, if an ALJ fails to factor those severe and non-severe limitations into the RFC, then the error cannot be harmless. *See, e.g. Ramos*, 674 F. Supp. 2d 1076, 1091 (E.D. Wis. 2009) (failure to factor severe and non-severe mental limitations into RFC resulting in error). In this instance, the ALJ failed to factor the Plaintiff's fibromyalgia into the RFC. Thus, as a matter of law, the ALJ's error at Step 2 was not harmless. As noted earlier, as a result of the error at Step 2, the RFC formulated at Step 4 is *ipso facto* erroneous as well.

In summary, the ALJ failed to provide a sufficient reason to support a crucial finding in her Decision, that the Plaintiff's fibromyalgia was not medically determinable. Her brief rationale for this conclusion is lacking. Moreover, the

ALJ's finding on this point is directly contradicted by evidence from the Plaintiff's medical records. On remand, the ALJ is directed to more thoroughly address the Plaintiff's alleged fibromyalgia, as well as all of the related evidence, in a manner consistent with this opinion.

V

For the reasons set forth, *infra*, this Court REVERSES the Commissioner's decision, GRANTS the Plaintiff's Motion for Summary Judgment (D. 15), DENIES the Commissioner's Motion for Summary Affirmance (D. 19), and REMANDS to the Commissioner for a new hearing pursuant to the fourth sentence of 42 U.S.C. § 405(g). The Clerk's Office is hereby directed to enter Judgment in favor of the Plaintiff and against the Defendant. This matter is now terminated.

*It is so ordered.*

Entered on August 4, 2017.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE